IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERRI ELLEN EHRLICH                                                                                PLAINTIFF

VS.                                      CIVIL NO. 2:14-CV-02052

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Terri Ellen Ehrlich, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

**I.  Procedural Background**

Plaintiff protectively filed her application for DIB on October 24, 2011, alleging an inability to work since April 1, 2009, due to degenerative disc disease in her neck and back, carpal tunnel syndrome in both wrists, pain in her hips, knees, and ankles, and depression. (T. 47-50, 134-137, 158) For DIB purposes, Plaintiff's date last insured was December 31, 2014. (T. 154) Plaintiff's claims were denied initially and on reconsideration. (T. 75-77, 84-85) An administrative hearing was held on November 16, 2012, at which Plaintiff appeared with counsel and testified. (T. 38-70)

At the time of the hearing, Plaintiff was forty-nine years of age and possessed a tenth

grade education. (T. 44) Plaintiff had past relevant work ("PRW") experience as a cook and housekeeper for a monastery. (T. 46, 53-54, 68-69, 165, 174) Plaintiff had been employed at the monastery for twenty years. (T. 46, 174)

By a written decision dated March 15, 2013, the Administrative Law Judge ("ALJ") determined Plaintiff had the following severe impairments: back disorder (cervical and lumbar degenerative disc disease post cervical fusion), osteoarthritis, hypertension, and depression. (T. 17). Regarding these severe impairments, the ALJ determined that Plaintiff's back impairment could reasonably cause pain and limit the Plaintiff's sitting, standing, and lifting; that Plaintiff's osteoarthritis could reasonably be expected to cause pain and limit the Plaintiff's sitting, standing, walking, lifting and carrying; that Plaintiff's hypertension could reasonably be expected to cause headaches, dizziness, or confusion, or require treatment with medications that cause adverse side effects that limit the Plaintiff's ability to perform work activities; and, that Plaintiff's mood disorder could reasonably affect the Plaintiff's concentration, persistence, and pace, or impair the ability to interact appropriately with co-workers, supervisors, and the public. (T. 17-18) After reviewing all of the evidence presented, however, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (T. 18-20) The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except as follows: to frequently lift and/or carry ten pounds and occasionally twenty pounds, to sit for a total of six hours in an eight hour day, to stand and/or walk for a total of six hours in an eight hour day, and to perform unskilled work that includes simple tasks with simple instructions. (T. 20) With the help of a Vocational Expert ("VE"), the ALJ determined Plaintiff

could not perform all of her PRW, but that she could perform her PRW as a Housekeeper. (T. 23-24) Considering the Plaintiff's age, education, work experience, and RFC, the ALJ determined there were a significant number of jobs in the national economy that Plaintiff could perform. (T. 24-25) The ALJ then found that Plaintiff had not been under a disability during the relevant time period. (T. 25)

Plaintiff requested a review of the hearing decision by the Appeals Council on May 8, 2013. (T. 10) The Appeals Council denied Plaintiff's request for review on February 7, 2014. (T. 1-6). Plaintiff then filed this action on March 19, 2014. (Doc. 1) The case is before the undersigned pursuant to the consent of the parties. (Doc. 11) Both parties have filed appeal briefs, and the case is ready for decision. (Docs. 13, 14)

## II.  Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v.*

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

### III. Discussion

The ALJ has a "'duty to develop the record fully and fairly, even if ... the claimant is represented by counsel.'" *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)); *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir.

1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made). This is so because an administrative hearing is not an adversarial proceeding. *Henrie v. Dept. of Health & Human Serv.,* 13 F.3d 359, 361 (10th Cir.1993). "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988). That duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Smith v. Barnhart* 435 F.3d 926, 930 (8th Cir. 2006). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

The Court is concerned that the ALJ failed to fully and fairly develop the record regarding Plaintiff's limitations and RFC.

In his Decision, the ALJ referred to a consultative examination of the Plaintiff performed by Richard Trevor, M.D. on July 11, 2009 at the request of DDS. (T. 21) Upon his one examination of Plaintiff, Dr. Trevor opined that Plaintiff "should be able to sit, walk, and/or stand for a full workday . . . I believe she is limited in her ability to lift/carry objects for any extended period of time. (T. 261) The ALJ also mentions the report of a non-examining consultative physician, A. Edward Dean, M.D., who conducted a review of Plaintiff's medical

records on July 28, 2009 and concluded that Plaintiff remained able to perform light exertional work. (T. 21, 278-285) The ALJ then discussed the report of a non-examining consultative psychologist, Tom Ray, Ph.D., who reviewed Plaintiff's medical evidence and found that Plaintiff had no medically determinable mental impairment. (T. 21, 276) In discussing these opinions, the ALJ does not specify how much weight he has given to them, but it appears from his Decision that he has given them all great weight.

The ALJ does indicate that he gave substantial weight to the opinion of Chester L. Carlson, D.O., another one-time examining consultant, who examined Plaintiff on November 14, 2011. (T. 22) Dr. Carlson diagnosed Plaintiff with chronic back pain secondary to degenerative disc disease and arthritis, chronic neck pain secondary to degenerative disc disease status post surgical fusion at C6-C7, and he concluded that Plaintiff had "minimally limited ability to bend, lift, walk long distances due to back pain," and that she had "moderately limited ability to rotate and extend neck." (T. 290)

The Court has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Cox v. Barnhart* 345 F.3d 606, 610 (8th Cir. 2003).

The Court notes that none of the above-mentioned consultative physicians had the benefit of reviewing the MRI reports of July 23, 2012, the report of neurosurgeon Shawn P. Moore, M.D. dated September 5, 2012, the treatment records of Plaintiff's treating physician, Jerry R.

Stewart, M.D. from May 11, 2012 through October 22, 2012, or the treatment records from Angela Chapman, M.D. and Clark Williams, Ph.D. at Western Arkansas Counseling and Guidance Center dating from May 31, 2012 through September 21, 2012. (T. 307-311, 312-315, 320-328, 331-347) All of these medical records demonstrate severe physical and mental impairments suffered by Plaintiff, but the ALJ, in the Court's view, has not adequately considered them in determining the Plaintiff's RFC.

The MRI of Plaintiff's cervical spine done on July 23, 2012 reveals degenerative changes at multiple levels, including: mild hypertrophy of the right uncinate process and associated mild stenosis of the right neural foramina at C3-C4; a small posterior osteophyte in a left paracentral distribution, mild hypertrophy of the right uncinate process, a mild diffuse disc bulge, and abutment upon the anterior aspect of the thecal sac at C5-C6; the fusion of the C6 and C7 vertebral bodies, with a small osteophyte formation with abutment on the anterior aspect of the thecal sac; and, mild hypertrophy of the left uncinate process with associated mild stenosis of the left neural foramina at C7-T1. (T. 307-308)

The MRI of Plaintiff's lumbar spine done on July 23, 2012 also shows degenerative changes at multiple levels, including: hypertrophy of bilateral uncinate processes, right more than left, and abutment upon the posterior aspect of the thecal sac with associated mild spinal canal stenosis at T10-T11; a mild diffuse disc bulge and small posterior osteophyte formation at L1-L2; a mild diffuse disc bulge and small posterior osteophyte formation at L2-L3; a mild diffuse disc bulge with slight right asymmetry, mild hypertrophy of the ligamentum flavum, and also mild stenosis of the right neural foramina at L3-L4; mild diffuse disc bulge into the bilateral neural foramina, left greater than right, mild stenosis of the bilateral neural foramina, and

hypertrophy of the ligamentum flavum and bilateral facet joints at L4-L5; and, minimal bulging of disc in a left paracentral distribution at L5-S1. (T. 309-310)

Shawn P. Moore, M.D., a neurosurgeon, saw Plaintiff on September 5, 2012, at which time he reviewed her signs, symptoms, and the MRI results with her. Upon physical exam, Dr. Moore found that Plaintiff has "markedly diminished range of motion with cervical flexion, extension, and lateral rotation," and that she has "diminished range of motion with lumbar flexion, extension, and rotation." (T. 314) Dr. Moore reported:

> "I counseled her that in light of her diffuse degenerative disk disease, I would not recommend surgical intervention. This would require extensive fusions of her lumbar and cervical spine. I am not optimistic that this would significantly improve her pain levels or functional status. I will refer her to Dr. Sewell with Anesthesia for evaluation and treatment." (T. 314)

It is concerning to the Court that all the ALJ gleaned from Dr. Moore's report was that "surgical treatment was not indicated and the claimant was referred to Dr. Sewell with anesthesia for evaluation and treatment." (T. 22) Such a conclusion by the ALJ unfairly mis-characterizes the substance of Dr. Moore's report. It is clear from Dr. Moore's report that the *reason* "surgical treatment was not indicated" is that surgery would require "*extensive fusions of her lumbar and cervical spine*" with little likelihood of providing pain relief or functional improvement. As a result, Dr. Moore referred Plaintiff to an anesthesiologist for evaluation and pain management treatment. Opinions of specialists on issues within their areas of expertise are generally entitled to more weight than the opinions of non-specialists. *See* 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5); *Guilliams v. Barnhart* 393 F.3d 798, 803 (8th Cir. 2005); *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010).

AO72A
(Rev. 8/82)

Plaintiff's primary treating physician, Jerry R. Stewart, M.D., diagnosed Plaintiff with multiple impairments, including but not limited to, backache, neck pain (cervicalgia), orthopedic disorders of the spine, carpal tunnel syndrome, and depression. (T. 320, 323, 325) The ALJ commented that "no functional limitations were assessed" by Dr. Stewart (T. 22) That fails to recognize, however, that "a treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment." *See Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

Concerning Plaintiff's mental impairment, depression, she was evaluated and treated at Western Arkansas Counseling and Guidance Center. Plaintiff was diagnosed as suffering from severe, recurrent major depressive disorder. (T. 331, 335, 337, 346) At a visit on August 9, 2012, Plaintiff reported a history of depression for "all my life," that she has dealt with it "in my own way," and that she has had episodes of severe depression lasting longer than two weeks in duration. (T. 333) Her treatment records at WACGC also reflect "problems with access to healthcare services." (T. 335, 346)

The ALJ noted that Plaintiff was started on Cymbalta, but quit the medication because she did not like the way it made her feel. (T. 23) Plaintiff had complained on September 21, 2012 that Cymbalta made her extremely irritable, that she had a medical procedure scheduled on October 4, 2012 (an esophagogastroduodenscopy with biopsy and dilatation)(T. 349-352), and that she did not want to start any new medications prior to that procedure. (T. 331) Although the ALJ commented about Plaintiff discontinuing Cymbalta, he failed to mention that the treatment

plan called for her to begin taking Celexa after the October 4, 2012 procedure. (T. 332) During the ALJ hearing, Plaintiff testified to taking Celexa. (T. 50)

The ALJ also stated that "[t]he onset of the claimant's symptoms was not identified," and that ". . . there is no evidence to support a finding of depression symptoms prior to the alleged onset date." (T. 23) That ignores the Plaintiff's report to her physician of long-standing troubles with depression, including severe episodes lasting longer than two weeks. Further, the absence of treatment records for depression prior to the alleged date of onset does not end the inquiry, as the medical evidence does establish that at least prior to the administrative hearing and within the relevant time frame the Plaintiff was diagnosed with severe, recurrent depression. In his finding that Plaintiff's impairment from depression was severe, the ALJ found that it could reasonably affect the Plaintiff's concentration, persistence, and pace, and that it could also impair her ability to interact appropriately with co-workers, supervisors, and the public. (T. 18) Despite this, the ALJ did nothing to further develop the record as to just how Plaintiff's severe impairment from depression would affect her ability to work. If the ALJ had a question about the date of onset, and about the functional limitations resulting from Plaintiff's depression, he should have sought clarification from Plaintiff's physician at WACGC or from a medical consultant. *Vaughn v. Heckler, Supra.*; *Smith v. Barnhart, Supra.*

After reviewing the record as a whole, the Court concludes that the ALJ did not fully and fairly develop the record in order to properly determine Plaintiff's RFC. Therefore, the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence, and the case must be reversed and remanded. On remand, the ALJ should address interrogatories to the neurosurgeon, Shawn P. Moore, M.D., and to Plaintiff's treating physician, Jerry R. Stewart, M.D., requesting

that they complete an RFC assessment and opine as to whether Plaintiff's physical impairments limit her ability to work. Additionally, the ALJ should address interrogatories to Angela Chapman, M.D. and Clark Williams, Ph.D. at Western Arkansas Counseling and Guidance Center requesting that they complete an RFC assessment and opine as to whether Plaintiff's mental impairment limits her ability to work.

With this additional evidence, the ALJ should then reassess Plaintiff's RFC and specifically list in a hypothetical to a Vocational Expert any limitations that are indicated in the RFC assessments and supported by the evidence.

### IV.  Conclusion

Having carefully reviewed the record, the Court finds that the ALJ's Decision denying the Plaintiff benefits is not supported by substantial evidence, and therefore, the case should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 9th day of February, 2015

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE